Ernest L. CLESTER, Jr., Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 3–99–CV–90013.

United States District Court,
S.D. Iowa,
Davenport Division.

Sept. 29, 1999.

Michael DePree, Davenport, IA, for Plaintiff.

Gary L. Hayward, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Ernest L. Clester, filed a Complaint in this Court on January 27, 1999, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

Plaintiff filed an application for benefits on January 22, 1996. Tr. at 113–18. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Donald R. Holloway (ALJ) on October 2, 1997. Tr. at 45–74. The ALJ issued a Notice of Decision— Unfavorable on October 30, 1997. Tr. at 10–35. The ALJ's decision was affirmed by the Appeals Council of the Social Security Administration on December 12, 1998. Tr. at 5–7. Plaintiff filed his Complaint in this Court on January 27, 1999.

At the time of his hearing, Plaintiff was 28 years old. Tr. at 48. On December 3, 1974, when Plaintiff was five years old, he was seen at the University of Iowa Hospitals and Clinics, Department of Pediatrics, because of episodes of abdominal discomfort followed by sleep which were strongly

suggestive of seizure activity. It was noted that when Plaintiff was two and a half years old, he suffered head trauma when he fell down the stairs. It was also noted that Plaintiff was doing poorly in kindergarten in that he had a short attention span and was not attentive to what he was doing. Tr. at 189. In a treatment note dated December 11, 1994, from Muscatine Health Center, the doctor stated that Plaintiff was having a lot of problems in kindergarten recognizing letters. The doctor wrote: "I think this child has been having some problem with his seizures ..." Tr. at 272. An office note dated October 15, 1974 states that Plaintiff's history was "significant in that the boy repeatedly fell striking the head in approx. the same area of the left temple at 1½ to 2 years of age. She [the mother] states that he had a very large swelling in that area for almost a year." Tr. at 274. According to an entry in the medical record. Plaintiff's problem first occurred in August, 1974. He had been out playing and was extremely hot when he came in, was nauseous with epigastric pain. Plaintiff's mother noted that he "was very shocky looking and was quite diaphoretic around the nose and oral area. (Tr. at 274–75). At that point the pt. had a syncopal attack during which he was generally nonresponsive for 2–3 minutes." Thereafter, Plaintiff slept for three hours after which he had recovered. Tr. at 275. A doctor's treatment note dated October 25, 1978, when Plaintiff was nine years old, states that he was continuing to take Dilantin, although the seizures were under very good control. Tr. at 250. When Plaintiff would stop taking his medication, or only take it intermittently, his seizures would re-occur. Tr. at 255. Jon Fusselman, M.D. from Muscatine Health Center, wrote to Disability Determination Services on December 5,

1991 [1] that Plaintiff was "a 22 year old with tonic clonic seizures recurrent since five years of age. His last seizure was approximately five years ago." Tr. at 278.

Plaintiff was seen for a psychological evaluation at the request of Disability Determination Services on May 28, 1992, by Ruth A. Evans, Ph.D. "for evaluation of cognitive status". Tr. at 279–82. Plaintiff was administered a Wechsler Adult Intelligence Scale–Revised (WAIS–R) to assess intellectual functioning and a Wide Range Achievement Test–Revised (WRAT–R) to assess academic achievement. On the WAIS–R, Plaintiff scored a verbal IQ of 80, a Performance IQ of 81, and a Full Scale IQ of 79. This demonstrated borderline to low average IQ. On the WRAT–R, Plaintiff demonstrated reading skills at the beginning sixth grade level, arithmetic skills at the beginning 5th grade level, and spelling skills at the third grade level. "His spelling deficiency is consistent with his demonstrated difficulty in the area of long-term visual memory," wrote the psychologist. Tr. at 281.

Plaintiff was seen for a psychiatric evaluation at the request of Disability Determination Services by James Yeltatzie, M.D. on April 23, 1996. Tr. at 337–39. Dr. Yeltatzie noted that Plaintiff quit school in the 10th grade after a fight with a vice principal. Tr. at 337. Plaintiff reported that during his school years, he had been treated with Cylert and Ritalin which Dr. Yeltatzie opined was used for temper management and to decrease Plaintiff's impulsive acting out. Dr. Yeltatzie wrote: "His work history is sporadic as he has difficulties getting along with other people and will often get mouthy with customers, supervisors, and co-workers, which eventually leads to his either walking off the job

---

1. In his decision, the ALJ noted that Plaintiff previously filed applications for Title II and Title XVI disability benefits on two occasions. The applications had been denied at the initial and reconsideration levels and no request for hearing had been filed. Plaintiff's application for childhood benefits had been reviewed un-

der the *Zebley* class action lawsuit through the reconsideration level on May 27, 1994. Tr. at 13. The ALJ declined to reopen the prior applications under the doctrine of *res judicata*. Tr. at 15. At the hearing, Plaintiff amended his alleged onset of disability date to August 31, 1995. Tr. at 48.

in an upset state or being fired from a job due to his behavior." On mental status examination, Plaintiff's psychomotor activity was decreased, and his eye contact was poor. Plaintiff's speech was latent, impoverished, and concrete in response to questions. Tr. at 338. Dr. Yeltatzie wrote:

Mr. Clester is a white male who presents at this time with multiple symptoms of an Organic Personality Disorder with his main component being temper management, explosive angry outbursts, and impulsivity. Also noted are some difficulties with moodiness and depression. These problems have interfered in his ability to complete his education as well as his ability to be gainfully employed. He has tried multiple jobs; however, due to his limitations cognitively and due to his personality problems secondary to his convulsive disorder, he has been unable to maintain steady work.

Mr. Clester would not be able to remember and understand instructions, procedures, locations, or being able to carry out such instructions, having difficulties with maintaining concentration, attention span, as well as a significant pace for gainful employment. Mr. Clester would also have severe problems interacting appropriately with supervisors, co-workers, and the public. He would not be able to respond appropriately to changes in the work place as his insight and judgment are limited, as well as his cognitive ability to make appropriate adjustments.

Tr. at 339.

Plaintiff was seen for a physical examination by neurologist Richard F. Neiman, M.D., on November 5, 1996, at the request of Disability Determination Services. Tr. at 361–62. After his examination, which did not include a mental status examination, Dr. Neiman opined that Plaintiff was not disabled. Tr. at 362.

At the administrative hearing, after Plaintiff had testified, the ALJ called Jack Reynolds to testify as a vocational expert.

Tr. at 68. The ALJ asked the following hypothetical question:

If we had a hypothetical man, 27, eight, nine years old with—if he was limited to lifting 50 pounds occasionally and 25 pounds frequently and he would be limited to jobs where he is able to understand, remember and carry out routine, simple tasks and instructions only. He can conform to a schedule. He works somewhat slow. Would function best in tasks that did not have stringent performance criteria or time limits. Cooperate and comply with instructions, he can do that okay and would function best in jobs that would not require much interaction with others. Able to relate, at least superficially, maintain appropriate appearance and would be adequate—has adequate judgment to protect himself to ordinary hazards and to take necessary precautions. With those limitations, would they have any—would that person be able to do his past relevant work?

In response, the vocational expert testified that Plaintiff's past work as a newspaper deliverer would be possible. In addition, the vocational expert pointed to examples of other unskilled work such as car lot porter, nursing home cleaner, and general commercial cleaner/janitor. Tr. at 72. Tr. at 69. The ALJ modified his hypothetical:

Again, with the same physical limitations, if we use not able to remember and understand instructions, procedures and locations or to carry out such instructions, our hypothetical person would have difficulty maintaining concentration and attention span and would have a significant impairment in pace. If he would have severe problems interacting appropriately with supervisors, coworkers and the public and would often not respond appropriately to changes in the work place, if those were the limitations, would that dictate any different results?

The vocational expert testified that these restrictions would eliminate the possibility of competitive work activity. Tr. at 71.

In his decision, that ALJ found, among other things, that Plaintiff has severe impairments including organic personality disorder, borderline intellectual functioning and a history of alcohol abuse possibly in remission. Tr. at 28. The ALJ found that Plaintiff has a residual functional capacity consistent with his first hypothetical to the vocational expert. The ALJ found that Plaintiff is able to do his past relevant work as a newspaper deliverer and the other unskilled jobs cited by the vocational expert. Tr. at 29. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which he had applied. Tr. at 30.

## DISCUSSION

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel,* 149 F.3d 907, 910–11 (8th Cir.1998).

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker*

*v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

In *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999), the Court wrote: "The ALJ's findings of fact ... are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."

In *Pfitzner v. Apfel,* 169 F.3d 566, 568 (8th Cir.1999), the Court wrote:

"An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity." *Groeper v. Sullivan,* 932 F.2d 1234, 1238–39 (8th Cir.1991). The Administration's own interpretation of the regulations reflects this need for specificity. The determination that a "claimant retains the functional capacity to perform past work ... has far-reaching implications and must be developed and explained fully in the disability decision." S.S.R. No. 82–62, 1982 WL 31386, *3 (Ruling 82–62). *See also Sells v. Shalala,* 48 F.3d 1044, 1046 (8th Cir.1995) (discussing Ruling 82–62). "This court has held, consistent with Ruling 82–62, that '[a] conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work.'" Id. (quoting *Groeper,* 932 F.2d at 1239).

## PSYCHIATRIC EVIDENCE

■ In the case at bar, the ALJ found that Plaintiff has the residual functional capacity to perform the exertional requirements of medium work. *See* 20 C.F.R. § 404.1567(c). According to the vocational expert's testimony, given the ALJ's finding of mental limitations, Plaintiff is limited to unskilled work activity. If Plaintiff's only mental impairment was borderline in-

tellectual functioning, it could be argued that the finding that Plaintiff is able to work would be supported by substantial evidence on the record as a whole. However, the ALJ found that Plaintiff suffers from another severe mental impairment, namely organic personality disorder. The ALJ's residual functional capacity finding ignores the limitations imposed by this severe impairment. The only substantial evidence on this question comes from the doctor who made the diagnosis, Dr. Yeltatzie. The ALJ stated that he rejected Dr. Yeltatzie's opinion because it was "not supported by objective medical evidence from other physicians or by the claimant's own admission of numerous daily activities." Tr. at 25. Elsewhere, the ALJ wrote: "However, the undersigned has given little weight to Dr. Yeltatzie's opinion since it is not supported by any other objective medical findings nor by the record as a whole." Tr. at 27. In the first place, the Court is unaware of any legal authority which requires a physician's medical opinion to be supported by "objective medical evidence from other physicians," nor does the Commissioner's brief cite any such authority. Rather, the Commissioner argues that Dr. Yeltatzie did not perform any testing upon which to base his opinion. On the contrary, Dr. Yeltatzie performed a mental status examination. The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury. *Comprehensive Textbook Of Psychiatry/V*, 456 (Harold I. Kaplan, M.D. and Benjamin J. Sadock, M.D. eds, 1989). During a mental status examination the doctor records his or her observations and impressions about the patient's mental functions by describing such things as appearance, activity, mood and affect, speech and language, thought content, perceptual disturbances, insight, judgment, and neuropsychiatric functions. *Id.* Quite frankly, the Court is unaware of what a psychiatrist is expected to do during a consultative examination, other than to review the patient's history, conduct a mental status examination and to report the results and recommendations regarding the patient's ability to function. *See* 20 C.F.R. § 404.1513. In *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir.1997), the Court wrote that a patient's report of complaints, or history, is an essential diagnostic tool. Citing *Brand v. Secretary of the Dep't of Health, Educ. And Welfare*, 623 F.2d 523, 526 (8th Cir.1980), the Court continued: "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints."

In *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir.1995), the Court wrote that psychiatrists, not lawyers or judges, are the experts on mental health issues. Dr. Yeltatzie was the only mental health professional to conduct an in-depth mental status evaluation and comment on Plaintiff's ability to function from a mental health point of view. Dr. Evans tested Plaintiff's IQ and academic achievement. Tr. at 281. Dr. Neiman, only performed a physical examination. Neither Dr. Neiman's report, nor that of Dr. Evans' contradicts Dr. Yeltatzie's opinion regarding Plaintiff's ability to function. Each of the three doctors looked at a different aspect of Plaintiff's claim, i.e. intellectual capacity, mental capacity, and physical capacity. The three reports are complementary rather than contradictory.

Not only is Dr. Yeltatzie's opinion is based upon medically acceptable diagnostic techniques, it is consistent with the evidence of Plaintiff's history. When Plaintiff was a child, he was diagnosed with a seizure disorder for which he took anti-convulsive medication. When he was a bit older, he was prescribed medication to control his behavior. Plaintiff has a history of head injuries. Plaintiff had difficulty with school from the time he was in kindergarten. Plaintiff was unable to complete school because of his behavior. Plaintiff was unable to obtain a GED because he could not pass the tests. Plaintiff had numerous jobs, none of which he could

hold for significant amounts of time because of high absenteeism, slow pace, and inability to respond appropriately to supervisors and co-workers. While some of these factors, individually, may not be significant, taken together they, along with his own examination, led Dr. Yeltatzie to make his diagnosis. Dr. Yeltatzie's uncontradicted report, therefore, is substantial evidence which detracts from the ALJ's decision.

## PLAINTIFF IS NOT ABLE TO FUNCTION IN COMPETITIVE EMPLOYMENT

■ The evidence is clear that Plaintiff has been unsuccessful in his attempts to hold jobs for substantial periods of time. For example, Dr. Evans reported:

> Mr. Clester reports having several short-term work experiences. He worked with Communications Data Services in Wilton for nearly a year but was fired for high absenteeism. He worked briefly at Kellar Ladder and reportedly learned how to drive a fork truck. He was terminated from his job at Green Thumbers Landscapers after two to three weeks. He stated that he had other small jobs, but that none of them lasted long, as he was "mouthy" and had difficulty getting along with people. For the past two months, he has been employed at Letica, where he previously worked for four months. He is on first shift hours and earns $120 per week.

Tr. at 280. One employer described Plaintiff's work as "slow and irresponsible." Tr. at 155. In *Rhines v. Harris*, the Court wrote: "Employers are concerned with substantial capacity, psychological stability, and steady attendance." In *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982), the Court wrote: "The most compelling evidence relates to Tennant's work history. Tennant has held *forty-six* jobs in his twelve years of employment. His longest tenure at any job was six months. It appears that he has been fired from most of these jobs." (Emphasis in original.)

Likewise, in the case at bar, Plaintiff's inability to hold a job is substantial evidence which detracts from the ALJ's decision. Given that the most serious aspect of Plaintiff's disability is his personality disorder, the daily activities pointed to by the ALJ, such as being able to mow a lawn, watch TV, and take care of his children (Tr. at 21), do not correspond to the ability to engage in employment on a day in day out basis in competitive and stressful conditions in which real people work in the real world. *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989).

## ALJ ERRONEOUSLY FOUND THAT PLAINTIFF IS ABLE TO DO PAST RELEVANT WORK

■ The ALJ found that Plaintiff is able to do his past relevant work as a newspaper deliverer. Past relevant work is defined in 20 C.F.R. § 404.1565: "We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, *and was substantial gainful activity*." (Emphasis added) *See also Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir.1998). In order for earnings to show that work activity qualifies as substantial gainful activity, earnings must be at least five hundred dollars per month. 20 C.F.R. § 404.1574(b)(2)(vii). Earnings of less than three hundred dollars per month do not show that work activity was substantial gainful activity. 20 C.F.R. § 404.1574(b)(3)(vii). When Plaintiff was asked how much he earned as a newspaper deliverer, he responded: "Maybe $100 a month." Tr. at 53. There is no other evidence in the record on this question. The ALJ, himself, pointed out that Plaintiff had not engaged in substantial gainful activity at any time since 1992. Tr. at 16.

20 C.F.R. § 404.1575(b)(6)(i) & (ii) states that if earnings, on average, are between three and five hundred dollars per month, it can be considered substantial gainful activity if the work is comparable to unimpaired people who do the same or similar

work as their means of livelihood, or "is clearly worth" three to five hundred per month. When the ALJ asked the vocational expert if it was possible for a newspaper deliverer to earn over $100 a week or $500 a month, the vocational expert responded: "It's very marginal." The vocational expert went on to explain if a person has more than one paper route, they can earn the kind of money about which the ALJ had asked. Tr. at 71.

In this case, the evidence is not clear that Plaintiff's work as a news paper deliverer was worth substantial gainful activity in the same way that it might for an unimpaired individual. In the first place, there is no evidence in the record that Plaintiff earned more than one hundred dollars per month from this work. In the second place, the vocational expert used the term "marginal" when asked if newspaper delivery work could be substantial gainful activity. Furthermore, the vocational expert testified that a newspaper deliverer would need to have more than one route to make the kind of money necessary to show that the job is substantial gainful activity. It matters not from which angle one looks at this issue. Plaintiff's work activity as a newspaper deliverer does not meet the definition of substantial gainful activity. Therefore, the finding that Plaintiff's work activity as a newspaper deliverer is past relevant work to which he can return is not supported by substantial evidence on the record as a whole.

### THE COMMISSIONER DID NOT CARRY HIS BURDEN OF PROOF

■ In *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987), the Court wrote that ordinarily, where the Commissioner incorrectly allocates the burden of proof based on an erroneous finding that Plaintiff can return to past relevant work, the Court should remand for completion of the sequential evaluation. As will be shown below, however, the record in this case demonstrates that the Commissioner failed to meet his burden of proof at step five of the sequential evaluation.

The job of newspaper deliverer is not part of Plaintiff's past relevant work. The other jobs in Plaintiff's work history are, according to the vocational expert precluded under either of the ALJ's hypothetical questions. The burden of proof, therefore, is on the Commissioner to prove with medical evidence that Plaintiff has a residual functional capacity to engage in work activity, and that other jobs exist in significant numbers that Plaintiff is able to do in his impaired condition. *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc) ("This burden includes the duty to establish by medical evidence that the claimant has the requisite RFC.") *See also O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983); *Wilcutts v. Apfel*, 143 F.3d at 1137 (8th Cir.1998); *Weiler v. Apfel*, 179 F.3d 1107, 1109 (8th Cir.1999); *Davis v. Callahan*, 985 F.Supp. 913 (S.D.Iowa) (discussing 8th Circuit case law on the issue of the burden of proof).

■ The ALJ found that Plaintiff's severe impairments include an organic personality disorder. When the concrete consequences of that disorder were included in a hypothetical question, the vocational expert testified that all competitive work would be precluded. "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir.1997).

■ In the ALJ's decision, he pointed to the opinions of the doctors at Disability Determination Services as medical evidence to support the residual functional capacity finding. These doctors, however, did not examine Plaintiff. The law in the Eighth Circuit is that the opinion of a doctor who does not examine a claimant is not substantial evidence upon which to base a denial of benefits. *Brock v. Secre-*

*tary of Health and Human Services,* 791 F.2d 112, 114 (8th Cir.1986).

In the opinion of the Court the Commissioner proved neither that Plaintiff has a residual functional capacity nor that jobs exist in the national economy that Plaintiff is able to do in his impaired condition.

In *Gavin v. Heckler,* 811 F.2d at 1201, the Court held that where the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary. As in *Gavin,* a remand in this case would be a "futile gesture" which would serve only to delay the receipt of benefits to which Plaintiff is clearly entitled. An order to award benefits, therefore, is hereby entered.

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D.Ark.1987). The evidence in this record does not establish that Plaintiff has the ability to return to past relevant work or to any other type of work that exists in significant numbers in the national economy. A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore, Plaintiff is entitled to disability benefits as of the amended onset of disability date, August 31, 1995.

Defendant's motion to affirm the Commissioner is denied. **This cause is remanded to the Commissioner for computation and payment of benefits.** The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509

U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

IT IS SO ORDERED.